**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 09-cv-01681-WJM-MEH

ISABELLE PEREZ, a minor, by and through her mother and conservator, Cynthia Cardenas,

      Plaintiff,

v.

JOAN HENNEBERRY, in her individual capacity and official capacity as the Executive Director of the Colorado Department of Health Care Policy and Financing, and
GARY H. ASHBY, in his individual capacity and official capacity as Manager of the Benefits Coordination Section in the Colorado Department of Health Care Policy and Financing,

      Defendants.

---

**ORDER**

---

This is a declaratory action in which Plaintiff seeks, among other things, a declaration of her rights under certain provisions in the federal Medicaid statutes. The matter is before the Court on Defendants' Motion for Summary Judgment and Plaintiff's First Amended Motion for Partial Summary Judgment.[1] The Court has jurisdiction under 28 U.S.C. § 1331.

**I. BACKGROUND**

Plaintiff is Isabelle Perez, a minor, through her authorized legal representative, Cynthia Cardenas. Defendants are officials with the Colorado Department of Health Care Policy and Financing (Department), the agency that administers the Medicaid

---

[1](ECF Nos. 34, 47.)

1

program in Colorado.[2]

Plaintiff was born on May 27, 2004.[3] She suffered a brain injury at birth and as result is permanently disabled.[4] Plaintiff has been receiving Medicaid benefits in Colorado since her birth.[5] As of April 24, 2009, Colorado Medicaid paid a total of $836,673.71 in medical assistance on Plaintiff's behalf.[6] Plaintiff has indicated she intends on remaining enrolled in the Medicaid program.[7]

Plaintiff, through her mother, Cynthia Cardenas, filed a medical malpractice suit against Dr. Vadna Jerath and St. Anthony North Hospital for the injuries she suffered at birth.[8] In December 2008, Plaintiff settled her case against Dr. Jerath in an amount that is under seal with the Jefferson County, Colorado District Court.[9] Pursuant to an agreement between the Department and Plaintiff, the Department was paid $100,000 from that settlement for medical care provided to Plaintiff before the final settlement.[10]

In April 2009, Plaintiff reached a confidential settlement with St. Anthony North

---

[2] (ECF No. 32 at 3 ¶ 6; ECF No. 46 at 2 ¶ 6.)

[3] (ECF No 32-1 at 2.)

[4] (ECF No. 32 at 6 ¶ 32; ECF No. 46 at 3 ¶ 32.)

[5] (ECF No. 32 at 6 ¶ 33; ECF No. 46 at 3 ¶ 33.)

[6] (ECF No. 32 at 6 ¶ 34; ECF No. 46 at 3 ¶ 34.)

[7] (ECF No. 32 at 6 ¶ 36; ECF No. 46 at 3 ¶ 36.)

[8] (ECF No. 32 at 7 ¶ 37; ECF No. 46 at 4 ¶ 37.)

[9] (ECF No. 70 at 5.)

[10] (*See* ECF No. 32 at 7 ¶ 41; ECF No. 46 at 4 ¶ 41; ECF No. 44 at 3 ¶ 7; ECF No. 51 at 3 ¶ 7.)

Hospital.[11]  Pursuant to Colorado's recovery statute, the Department has a lien on these proceeds in the amount of $736,673.71.[12]  On July 21, 2009, the Jefferson County District Court approved this settlement.[13]  The court established the I.P. Qualified Settlement Fund (QSF) and funded it with $785,000.00 of the settlement.[14]  This amount represents the Department's largest possible claim pursuant to its asserted lien ($736,673.71) plus additional funds to cover legal and administrative fees.[15]

On July 15, 2009, filed the instant action.  She brought three claims; two are still pending.[16]  In her first claim, Plaintiff seeks a declaration that Colorado's Medical Assistance Act Lien Provisions are inconsistent with the anti-lien provisions of the Medicaid Act, and preempted by federal statute to the extent they are inconsistent.  In her other claim, Plaintiff seeks a declaration that the assignment provisions of the Medicaid Act, to the extent they provide a limited exception to the Act's anti-lien provisions, prevent the State from recovering more than amounts from the settlement for past medical damages, apportioned in accordance with *Arkansas Dep't. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268 (2006).

---

[11](ECF No. 70 at 6.)

[12](*See* ECF No. 32-1 at 1-2.)

[13](ECF No. 70 at 6.)

[14](*Id.*)

[15](ECF No. 44 at 3 ¶ 10; ECF No. 51 at 3 ¶ 10.)

[16]The Court dismissed Plaintiff's second claim on April 12, 2010.  Plaintiff had sought a declaration that Colorado's Medical Assistance Act lien provisions were inconsistent with the disability trust exception of the Medicaid Act.  *See* 42 U.S.C. § 1396p(d)(4)(A).  The Court concluded this exception is not individually enforceable under 42 U.S.C. § 1983, under which Plaintiff brought the claim, and, thus, dismissed the claim.  (*See* ECF No. 41 at 6-7.)

On March 12, 2010, Defendants moved for summary judgment.[17] On April 16, 2010, Plaintiff moved for partial summary judgment.[18]

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A movant who bears the burden at trial must submit evidence to establish every essential element of its claim. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F. Supp.2d 1106, 1111 (D. Colo. 2002). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* FED. R. CIV. P. 56(c).

Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See*

---

[17](ECF No. 32.)

[18](ECF No. 44.)

*McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

When the parties file cross motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). Cross motions for summary judgment must be treated separately—the denial of one does not require the grant of another. *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

### III. DISCUSSION

The Court first considers Defendants' motion for summary judgment.

**A.    Defendants' Motion for Summary Judgment**

Defendants advance four arguments in support of their motion. The Court addresses each in turn.

####     1.    Whether Plaintiff Waived Her Right to Dispute the Department's Lien Against the Settlement Proceeds

First, Defendants argue Plaintiff waived her right to dispute the payment of the Department's lien by agreeing to partially reimburse the Department for medical assistance paid out of the first settlement and by entering into an agreement with the Department to take every reasonable effort in settlement negotiation to ensure that the lien is paid in full out of the second settlement.[19] This purported agreement is allegedly reflected, among other things, in a letter dated November 24, 2008, from Anne Holton,

---

[19](ECF No. 32 at 9.)

Defendants' counsel, to Eric Solem, Plaintiff's counsel.[20]

Plaintiff denies the existence of any such agreement. The question whether the parties entered into a contract is a question of fact. *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1986) ("it is for the jury to determine whether the parties have entered into a contract."). In this case, the Court concludes that whether such an agreement exists is a material fact over which the parties have genuine disputes. Accordingly, the Court rejects Defendants' argument that Plaintiff waived her right to dispute the Department's lien based on a prior agreement between the parties.

### 2. Whether the Court Should Enter Judgment in Favor of Defendants and Against Plaintiff on Plaintiff's First Claim

Next, Defendants argue the Court should enter judgment in their favor on Plaintiff's first claim. Plaintiff's first claim is for a declaration that the lien provisions of Colorado's Medical Assistance Act are inconsistent with the anti-lien provisions of the Medicaid Act, and preempted by federal statute to the extent they are inconsistent. Colorado's Medical Assistance Act provides in relevant part:

> (a) When the state department has furnished medical assistance to or on behalf of a recipient pursuant to the provisions of this article, and articles 5 and 6 of this title, for which a third party is liable, the state department shall have an automatic statutory lien for all such medical assistance. The state department's lien shall be against any judgment, award, or settlement in a suit or claim against such third party and shall be in an amount that shall be the fullest extent allowed by federal law as applicable in this state, but not to exceed the amount of the medical assistance provided.
>
> (b) No judgment, award, or settlement in any action or claim by a recipient to recover damages for injuries, where the state department has a lien, shall be satisfied without first satisfying the state department's lien.

---

[20](ECF No. 32-1 at 3-4, Ex. A-2, and 26-27, Ex. A-6.)

6

> Failure by any party to the judgment, award, or settlement to comply with this section shall make each such party liable for the full amount of medical assistance furnished to or on behalf of the recipient for the injuries that are the subject of the judgment, award, or settlement.
>
> (c) Except as otherwise provided in this article, the entire amount of any judgment, award, or settlement of the recipient's action or claim, with or without suit, regardless of how characterized by the parties, shall be subject to the state department's lien.

Colo. Rev. Stat. § 25.5-4-301(5).

Plaintiff attempts to invalidate these provisions by comparing the facts of her case to those in *Arkansas Dep't. of Health & Human Servs. v. Ahlborn*, 547 U.S. 268 (2006). The plaintiff in that case, Ahlborn, suffered severe and permanent injuries in a car accident. *Id.* at 272-73. She became a Medicaid recipient under Arkansas's Medicaid plan. *Id.* at 273. The state agency in charge of administering that plan, the Arkansas Department of Human Services (ADHS), paid medical providers $215,645.30 on Ahlborn's behalf. *Id.* at 273, 275. Ahlborn sued two alleged tortfeasors from the accident. *Id.* The case settled out of court for $550,000. *Id.* at 274. Acting pursuant to an Arkansas statute, ADHS asserted a lien against these proceeds in the amount $215,645.30—the total ADHS had spent on medical care for Ahlborn. *Id.*

Ahlborn sued ADHS in federal court challenging the lien. The suit made its way to the United States Supreme Court. The Court held that the Arkansas statute requiring the lien violated the anti-lien provisions in the federal Medicaid law, insofar as the Arkansas statute allowed encumbrance or attachment of proceeds meant to compensate Ahlborn for damages distinct from medical costs. *Id.* at 286, 292.

Plaintiff argues the above-cited Colorado statute is comparable to the Arkansas statute in *Ahlborn* and, thus, like the Arkansas statute, is preempted by the federal

7

Medicaid laws.[21] The Arkansas statute in *Ahlborn* provided in part that "[a]s a condition of eligibility" for Medicaid, an applicant "shall automatically assign his or her right to any settlement, judgment, or award which may be obtained against any third party to [ADHS] to the full extent of any amount which may be paid by Medicaid for the benefit of the applicant." *Ahlborn*, 547 U.S. at 277. It further provided that, if the Medicaid recipient sued a third party, the assignment described above would be "considered a statutory lien on any settlement, judgment, or award received by the recipient from a third party." *Id.* at 277-278. ADHS relied on these provisions in claiming an entitlement to more than just that portion of a judgment or settlement that represented payment for medical expenses. That is, ADHS claimed a right to recover the entirety of the costs it paid on the Medicaid recipient's behalf, even if such a recovery meant reaching portions of Ahlborn's settlement that represented damages distinct from medical costs, *e.g.,* lost wages or pain and suffering. *See id.* at 278.

Although the language in the Arkansas statute in *Ahlborn* is similar to Colorado's statute here, there is a key distinction between the two. The Arkansas statute specifically called for reimbursement to the "full extent of any amount which may be paid by Medicaid for the benefit of the applicant." *Ahlborn*, 547 U.S. at 277 (emphasis added). The Colorado provisions are not so absolute. They provide that the state's lien "shall be the fullest extent allowed by federal law as applicable in this state, but not to exceed the amount of the medical assistance provided." C.R.S. § 25.5-4-301(5)(a). That is, the lien extends only so far as permissible under federal law. That "law" is the

---

[21](*See* ECF No. 44 at 4-10; ECF No. 46 at 5-7.)

8

federal Medicaid laws, in this case, as interpreted by the Supreme Court in *Ahlborn*.

In *Ahlborn*, the Supreme Court examined the same Medicaid provisions at-issue in this case: the third-party liability and assignment provisions[22] and the anti-lien provisions.[23] The third-party liability provisions require, among other things, that states seek reimbursement from third parties who may be liable for a Medicaid recipient's medical expenses. In furtherance of this mandate, states must "[have] in effect laws under which, . . . the State is considered to have acquired the rights of such individual to payment by another party for such health care items or services." *Ahlborn*, 547 U.S. at 276 (quoting 42 U.S.C. § 1396a(a)(25)(H)). The *Ahlborn* Court concluded that these third-party liability provisions "[a]t the very least, . . . *require* an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care." *Id.* at 282 (emphasis in original).

The *Ahlborn* Court was tasked with reconciling the third-party liability provisions with the Medicaid statute's anti-lien provisions. The anti-lien provisions state, in relevant part, that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except–[under two circumstances not relevant here]." 42 U.S.C. § 1396p(a)(1). This Court acknowledges, as did the *Ahlborn* Court, that the anti-lien provisions, at first blush, appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care:

---

[22] *See* 42 U.S.C. §§ 1396a(a)(25)(A), (B), (H), and 1396k(a)-(b).

[23] *See* 42 U.S.C. § 1396p(a).

> Read literally and in isolation, the anti-lien prohibition contained in § 1396p(a) would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care. Ahlborn does not ask us to go so far, though; she assumes that the State's lien is consistent with federal law insofar as it encumbers proceeds designated as payments for medical care. Her argument, rather, is that the anti-lien provision precludes attachment or encumbrance of the remainder of the settlement.
>
> We agree. There is no question that the State can require an assignment of the right, or chose in action, to receive payments for medical care. So much is expressly provided for by §§ 1396a(a)(25) and 1396k(a). And we assume, as do the parties, that the State can also demand as a condition of Medicaid eligibility that the recipient "assign" in advance any payments that may constitute reimbursement for medical costs. To the extent that the forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision. *See Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383–385, and n. 7, 123 S.Ct. 1017, 154 L.Ed.2d 972 (2003).

*Ahlborn*, 547 U.S. at 284-285.

There can be no question, then, that the Department can require a Medicaid recipient like Plaintiff to assign her rights to receive payments from third parties for medical care. Nevertheless, Plaintiff insists that "[a]ny state statute attempting to impose a lien on settlement proceeds, as here, is invalid."[24] In this regard, Plaintiff seems to takes issue with the Colorado statute's use of the word "lien," a term also used in the Arkansas statute in *Ahlborn*. *Id.* at 277-278. The Court, however, finds no material distinction between the two terms. Regardless of whether the state imposes a lien on a Medicaid recipient's settlement proceeds or whether it forces an assignment of those proceeds, the result is the same. The state acquires a legal right over the

---

[24](ECF No. 44 at 6.)

proceeds. *Compare* BLACK'S LAW DICTIONARY 136 (9th ed. 2009) ("Assignment" meaning "[t]he transfer of rights or property"), *with id.* at 1006 ("Lien" meaning "[a] legal right or interest that a creditor has in another's property, . . . "); *see also Ahlborn*, 547 U.S. at 286 ("That the lien is also called an 'assignment' does not alter the analysis."). The Court concludes that the Department's lien is tantamount to a forced assignment of the right to recover that portion of the settlement that represents payments for medical care, which under *Ahlborn*, is consistent with both the third-party liability provisions and the anti-lien provisions in the federal Medicaid statute.

Accordingly, the Court grants judgment in favor of Defendants and against Plaintiff on Plaintiff's first claim, *i.e.*, on whether Colorado's recovery statute violates federal law and, thus, whether the Department's lien is valid under federal law.

### 3.    Whether Judgment Should Enter Judgment in Favor of Defendants and Against Plaintiff on Plaintiff's Third Claim

Defendants also seek judgment on Plaintiff's third claim.[25]  In this claim, Plaintiff seeks a declaration that the assignment provisions of the Medicaid Act, to the extent they provide a limited exception to the Act's anti-lien provisions, prevent Colorado from recovering more than amounts from the settlement for past medical damages, apportioned in accordance with *Arkansas v. Ahlborn*, 547 U.S. 268 (2006).[26]

In *Ahlborn*, the Court held that the anti-lien provisions of the federal Medicaid law precluded Arkansas from encumbering proceeds from Ahlborn's settlement that represented damages other than medical costs.  In that case, the parties stipulated as

---

[25](ECF No. 32 at 17-20.)

[26](ECF No. 1 at 13 ¶ 56; ECF No. 70 at 3-4.)

11

to what portion of Ahlborn's damages represented compensation for medical costs.[27] *Ahlborn*, 547 U.S. at 274, 280. In so doing, it was easily discernible which portion did not represent medical costs. The parties in this case have not so stipulated. And Plaintiff's settlement proceeds were not allocated according to specific types of damages, *i.e.*, damages from medical costs versus damages, for example, from lost future earnings or pain and suffering.[28] Thus, it is unclear what portion of Plaintiff's settlement represents compensation for medical costs. Given this uncertainty, Plaintiff asserts the Court should adopt the formula from *Ahlborn* to determine what portion of her settlement the Department is entitled to. The Court rejects Plaintiff's assertion. The *Ahlborn* formula was strictly a product of the parties' stipulation. In that case, it resulted in the state agency being reimbursed approximately one-sixth of what it had paid out in Medicaid benefits. *See id.* In the absence of a similar stipulation here, the Court will not dictate how the parties should allocate the proceeds in the settlement. The Department's recovery will be limited to those funds allocated to compensation for medical costs, regardless of the method used to make that allocation.

As to which post-allocation funds the Department may reach, Plaintiff asserts the Department may be reimbursed only for that portion that represents past medical costs.[29] That is, she argues the Department may not assert a lien on damages

---

[27]The stipulation provided that Ahlborn's recovery against the third-party tortfeasor represented one-sixth of the full value of her overall damages, and that ADHS would be entitled only to that portion of the recovery that represented compensation for medical expenses, which ADHS stipulated was approximately one-sixth of the total it had paid in medical expenses on Ahlborn's behalf. *Ahlborn*, 547 U.S. at 274, 280.

[28](ECF No. 32 at 8 ¶ 50; ECF No. 46 at 5 ¶ 50.)

[29](*Id.*)

representing future medical costs.[30]  It is true, as Plaintiff asserts, that the Department may be reimbursed only for its past medical expenses.  *See Price v. Wolford*, 608 F.3d 698, 706-07 (10th Cir. 2010) ("a state's recovery of Medicaid payments out of a tort settlement is limited to the portion of the settlement that represents medical costs paid by Medicaid.") (citing *Ahlborn*, 547. U.S. at 282-84).  That is, in fact, all the Department is seeking.  It seeks reimbursement of medical expenses it paid on Plaintiff's behalf through the date of the Plaintiff's settlement with the hospital.[31]  However, *Ahlborn* does not require, as Plaintiff suggests, that–in seeking this reimbursement–the Department is limited to funds allocated to past medical expenses.  The *Ahlborn* Court made no such distinction.  It stated, instead, "that the federal third-party liability provisions require an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care."  *Id.* at 282; *see also In re Matey*, 147 Idaho 604, 213 P.3d 389, 394 (Idaho 2009) ("The [*Ahlborn*] court made no distinction between damages for past medical care and those for future medical care.  Nothing in 42 U.S.C. § 1396p indicates that the State may not seek recovery of its payments from a Medicaid recipient's total award of damages for medical care whether for past, present, or future care.").

Because Plaintiff intends on staying on Medicaid, any funds allocated for future medical expenses should rightfully be exposed to the state's lien so that the state can be reimbursed for its past medical payments.  Accordingly, the Court concludes that the

---

[30](ECF No. 44 at 10-13; ECF No. 46 at 10-15.)

[31](*See* ECF No. 88 at 6.)

13

Department may seek reimbursement for its past medical expenses from funds allocated to "medical expenses," regardless of whether those funds are allocated for past or future medical expenses.

### 4. Whether a Judgment against Defendants means a Judgment against Department employees in their individual capacities

Finally, Defendants seek to preclude judgments against them in their individual capacities. In her Complaint, Plaintiff asserted these officials were liable in their individual and official capacity. Under 42 U.S.C. § 1983, state officials may be held individually liable if they cause the deprivation of a federal right. *Kentucky v Graham*, 473 U.S. 159, 166 (1985).

Plaintiff's asserted basis for holding Defendants individually liable assumes *Ahlborn* invalidated Colorado's recovery statute and, thus, that the Department's lien is invalid:

> [A]ny Colorado state official who attempts to enforce Colorado's invalidated recovery statute by imposing a lien on the property of a Medicaid recipient is acting outside of their official capacity. As a result, Ms. Henneberry and Mr. Ashby in fact acted *ultra vires* in attempting to enforce an invalid lien upon the settlement funds.[32]

The Court's conclusion that the lien is valid undercuts this theory. Accordingly, Plaintiff has no basis for attempting to hold Defendants individually liable. Thus, Plaintiff cannot maintain her action against these Defendants in their individual capacity. The

---

[32](ECF No. 46 at 17; see ECF No. 1 at 3.)

14

suit will proceed against Defendants in their official capacity only.[33]

The Court now considers Plaintiff's Motion for Partial Summary Judgment.

## B.     Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment on the following issues: (1) that Defendants do not posses a lien against any personal injury settlement proceeds received by Plaintiff pursuant to the Medicaid statute's anti-lien provisions and *Arkansas v. Ahlborn*, 547 U.S. 268 (2006) and (2) that Counsel for Cynthia Cardenas and counsel for the Defendants at no time entered into any settlement agreement concerning Defendants' Medicaid claim.

Both issues have been resolved by the Court's analysis of Defendants' Motion for Summary Judgment.  It found that (1) Defendants do posses a valid lien against Plaintiff's personal injury settlement proceeds and (2) that the question whether the parties entered into an agreement concerning Defendants' Medicaid claim is a question of fact on which there exist genuine disputes; thus, the Court will not enter judgment on that issue.  Accordingly, the Court denies Plaintiff's motion for partial summary judgment in its entirety.

## IV.  CONCLUSION

First, the Court concludes that Colorado's Medicaid lien statute is not invalid, *i.e.*, it is consistent with the federal Medicaid statute's anti-lien provisions as interpreted by the Supreme Court in *Arkansas Department of Human Services v. Ahlborn*, 547 U.S.

---

[33] Gary Ashby no longer works at the Department.  (ECF No. 32 at 21 n.3; ECF No. 46 at 17 n.5.)  Accordingly, under Fed. R. Civ. P. 25(d), Ashby's successor, Robert Douglas, is automatically substituted as a party.

268 (2006).

Second, the Court concludes that the Department can seek reimbursement from that portion of Plaintiff's settlement proceeds that represents medical expenses—past and future–up to the total amount it spent on Plaintiff's behalf as of the date of April 24, 2009.  The case will proceed to trial to determine what portion of Plaintiff's settlement represents those medical expenses.

Third, the Court concludes that genuine disputes of material fact prevent this Court from deciding, one way or the other, whether the parties had an agreement regarding how the Department would be reimbursed for its Medicaid expenditures.  The Court reserves ruling on what effect, if any, such an agreement would have on the outcome of this case.

Finally, the Court concludes that Plaintiff cannot maintain her action against Defendants in their individual capacity.  Plaintiff's action will proceed against Defendants in their official capacity only.  Given these conclusions,

- Plaintiff's First Amended Motion for Partial Summary Judgment (ECF No. 47) is DENIED.
- Defendants' Motion for Summary Judgment (ECF No. 34) is GRANTED in part and DENIED in part.
    - The motion is GRANTED:
        - Insofar as Defendants seek to deny Plaintiff a declaration that Colorado's recovery statute violates the federal Medicaid laws.
        - Insofar as Defendants seek "judgment" on Plaintiff's third "claim," *i.e.*, that the Court adopt the proportionality analysis in *Ahlborn* and

> by holding that the Department's recovery of medical expenses is limited to funds allocated to past medical expenses. The Department can recover its expenditures from funds allocated to past and future medical expenses. The case will proceed to trial to determine what portion of Plaintiff's settlement proceeds constitutes "medical expenses."

- Insofar as Defendants seek to preclude liability against them in their individual capacity. The suit will proceed against Defendants in their official capacity only.

• The motion is DENIED in all other respects, including:

- Insofar as Defendants ask the Court to hold that Plaintiff waived her arguments regarding its Medicaid lien given the parties' agreement.

Dated this 26th day of April, 2011.

BY THE COURT:

_William J. Martínez_
United States District Judge